**UNITED STATES DISTRICT COURT**

**for the**

**Northern District of Ohio**

**(Akron Division)**

FILED
AUG 27 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
AKRON

**Shawn Pongratz**
**and Aleesha Pongratz**

*Plaintiff(s)*

**V.**

**CASE NO:**

**(To be assigned by Clerk)**

5:26 CV 2078
JUDGE ADAMS
MAG JUDGE KNAPP

**MELISSA KELLEY, Individually;**
**MONIQUE BRICKEN, Individually;**
**JASON HAMRIC, Individually;**
**JAIME GRUNDER, Individually;**
**SUPERVISOR JANE DOE, Individually;**
**TUSCARAWAS COUNTY, OHIO,**
Defendants.

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**AND MOTION FOR ADMINISTRATIVE STAY**
**JURY TRIAL DEMANDED**

**PRELIMINARY STATEMENT & JURISDICTION**

1. This is a civil rights action brought under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is invoked under 28 U.S.C. § 1331.

2. The events giving rise to this claim occurred entirely within Tuscarawas County, Ohio.

**PARTIES**

3. Plaintiffs Shawn Pongratz and Aleesha Pongratz are residents of Summit County,

Ohio, and are the biological parents of the minor children involved. Both Plaintiffs have not lost or been stripped of their parental rights at the time of this filing. The constitutional violations giving rise to this action occurred entirely while Plaintiffs resided within Tuscarawas County, Ohio.

4. Defendant Melissa Kelley was a caseworker employed by Tuscarawas County Job & Family Services (TCJFS) who initiated the removal under color of state law.

5. Defendant Monique Bricken was a caseworker employed by TCJFS who physically accompanied Defendant Melissa Kelley and actively participated in the initial removal under color of state law.

6. Defendant Jason Hamric was a caseworker employed by TCJFS who managed the case plan for approximately 20 months under color of state law until his sudden resignation on August 3, 2026.

7. Defendant Jaime Grunder was at all times a caseworker supervisor employed by TCJFS, acting as the direct supervisor to Defendant Jason Hamric under color of state law.

8. Defendant Supervisor Jane Doe was an employee and supervisor at TCJFS who acted as the direct supervisor to Defendant Melissa Kelley, whose exact identity is currently unknown to Plaintiffs, acting at all times under color of state law.

9. Defendant Tuscarawas County is a local government political subdivision responsible for the policies, customs, and training of TCJFS employees.

**FACTUAL ALLEGATIONS**

The Bed Frame Referral, Retaliation, and Fraudulent Access Order

10. On August 27, 2024, Defendant Melissa Kelley initially arrived at Plaintiffs' residence to investigate a minor administrative complaint alleging that the minor children's beds lacked formal bed frames. Defendant Melissa Kelley requested warrantless entry into the home and access to interview the minor children. Exercising their established constitutional rights under the Fourth Amendment, Plaintiffs declined entry and explicitly informed Defendant Melissa Kelley that she would not be permitted inside the residence without a formal court order. At no point during this August 27, 2024 encounter did Defendant Melissa Kelley express any immediate safety concerns, emergency conditions, or allegations regarding domestic violence, physical abuse, or substance dependency.

11. On August 28, 2024, in direct retaliation against Plaintiffs for exercising their constitutional right to refuse a warrantless entry, Defendant Melissa Kelley went to the local juvenile court to secure an "Order of Access." To get the court into issuing the order, Defendant Melissa Kelley knowingly, intentionally, and in bad faith fabricated a false narrative to the judge, claiming there were immediate, severe concerns regarding ongoing domestic violence, active abuse of the children, systemic neglect, and severe drug abuse within the home. Defendant Melissa Kelley deliberately withheld the material fact that the entire investigation originated 24 hours prior over a simple bed frame complaint and that no safety issues were noted, constituting an egregious, and bad-faith act of judicial deception to obtain a court order under completely fraudulent pretenses.

The Scope Violation, Warrantless Seizure, and Coerced Safety Plan

12. On August 28, 2024, Defendant Melissa Kelley and Defendant Monique Bricken returned to Plaintiffs' residence utilizing the fraudulently obtained "Order of Access." While that order strictly authorized them only to look inside the residence and interview the minor children, Defendants possessed no warrant, no emergency custody order, and no legal authority to remove the children from parental custody. Bypassing the explicit boundaries of the access order, Defendants executed a full physical removal of Plaintiffs' minor children without a removal warrant and without the presence of true exigent circumstances or immediate life-threatening physical danger.

13. In executing the warrantless removal on August 28, 2024, Defendants orchestrated a highly coercive show of force utilizing armed law enforcement officers. Specifically, Defendants dispatched Tuscarawas County Sheriff's deputies to escort Plaintiff Aleesha Pongratz directly from her place of employment back to the family residence under official authority. Upon arrival, Defendant Melissa Kelley and Defendant Monique Bricken, accompanied by officers from the New Philadelphia Police Department, surrounded and occupied the residence. Compounding this egregious conflict of interest, one of the responding officers on scene actively assisting in the seizure was New Philadelphia Police Officer Kyle Kelley, the lawful spouse of Defendant Melissa Kelley. While executing this unlawful seizure, Defendant Melissa Kelley was actively communicating via telephone with her direct supervisor, Defendant Supervisor John Doe, who authorized and directed the ongoing unconstitutional removal. Defendants weaponized this marital and professional relationship to create an overwhelming show of state police power designed to intimidate Plaintiffs, restrict their freedom of movement, and force compliance under extreme duress.

14. At the time of physical removal on August 28, 2024, Defendant Melissa Kelley and Defendant Monique Bricken offered no supportive or preventive services, made no reasonable efforts to prevent removal, and did not conduct, request, or administer any drug screen or sobriety assessment to justify an emergency seizure, in direct defiance of established statutory mandates and agency policy prioritizing family preservation.

15. Defendants forced Plaintiffs to sign an internal "Safety Plan" by actively threatening that refusal to sign would result in the immediate placement of the children into state foster care. This coercion constituted extreme duress, rendering any alleged parental consent void under the Fourth Amendment.

The September 4, 2024 Verbal Revocation and Continued Detention

16. On September 4, 2024, upon retaining legal counsel and discovering the Safety Plan was non-binding and voluntary, Plaintiffs placed a telephone call to Defendant Melissa Kelley and explicitly, verbally revoked all voluntariness, demanding the immediate return of the minor children.

17. In direct response, Defendants refused to return the children, instructed the physical placements to withhold the children, and directed them to contact law enforcement to arrest Plaintiffs if Plaintiffs attempted to retrieve the children.

18. From the verbal revocation on September 4, 2024, until a formal complaint was filed on September 30, 2024, Defendants maintained an intentional, warrantless, and non-consensual physical detention of the minor children for 26 days without judicial oversight.

Judicial Deception, Evidentiary Absence, and Conflicted Judiciary

19. Under Ohio Revised Code § 2151.314, Defendants were legally mandated to cause an emergency shelter care hearing to be held within 72 hours of the physical removal on August 28, 2024. Defendants failed to provide this hearing.

20. On September 30, 2024, Defendants filed a formal juvenile court complaint and set a hearing for October 3, 2024.

21. Defendants deliberately omitted the August 28, 2024 removal date from the court filing, concealing the 33-day detention and misleading the court into believing the October 3, 2024 hearing complied with statutory deadlines.

22. At the October 3, 2024 hearing, Defendants presented zero documentary, physical, or lab evidence of abuse, neglect, or unfitness, relying solely on uncorroborated caseworker testimony. At approximately 17 minutes and 13 seconds into the official proceeding audio, the presiding judge improperly advocated from the bench by instructing the agency's attorney how to formulate questions—specifically directing counsel to ask whether the agency made reasonable efforts to prevent removal and instructing counsel to follow up with "how" to satisfy statutory prerequisites under R.C. 2151.419.

23. During the October 3, 2024 hearing, Plaintiffs repeatedly stated on the record that they had retained private counsel the previous day and objected to proceeding unrepresented. The presiding judge denied requests for a continuance, forced Plaintiffs to proceed without counsel, and awarded temporary custody to TCJFS.

24. The structural due process violations within the state court proceeding were further exacerbated by a severe, unconstitutional conflict of interest involving the presiding

juvenile court judge. The judge had previously served as a Plaintiff's criminal defense attorney in prior legal matters. Despite this clear, disqualifying conflict, the judge continued to preside over and issue adverse rulings in Plaintiffs' case for nearly a year, until finally recusing himself on September 28, 2025. This failure to provide a detached, neutral, and impartial tribunal from the outset severely tainted the legitimacy of the custody orders.

25. The completely fraudulent and retaliatory nature of the initial seizure was later confirmed by the state court itself. Following formal hearings, the underlying allegations of physical abuse fabricated by Defendant Melissa Kelley were completely dismissed by the court. This formal dismissal proves that Defendants lacked any credible, objective evidence of abuse to justify either the initial warrantless raid or the fraudulent procurement of the August 28, 2024 Order of Access.

26. The structural bias and denial of a neutral tribunal were further broadcast on the record by the presiding magistrate during a formal adjudicatory hearing. In the middle of the active proceeding, before Plaintiffs had even concluded presenting their legal defense, the magistrate explicitly stated from the bench that she had already pre-determined the outcome and intended to find Plaintiffs guilty of dependency and neglect regardless of the evidence presented. The magistrate actively leveraged the fabricated physical abuse allegations to extort a waiver of rights from Plaintiffs, explicitly stating that the court was "running out of time," and offering to dismiss the abuse allegations strictly on the condition that Plaintiffs abandon their defense and immediately sign the agency's case plan to avoid "having to keep coming back." This egregious on-the-record pre-judgment and coercion completely destroyed any semblance of a fair, impartial trial and constituted a flagrant violation of Plaintiffs' Fourteenth Amendment Due Process rights.

Two-Year Pattern of Continuous Systemic Violations and Perjury

27. Throughout the state proceedings, Defendant Melissa Kelley, Defendant Monique Bricken, and Defendant Jason Hamric routinely committed perjury under oath and fabricated evidence, including intentionally falsifying and misrepresenting Plaintiffs' drug test results to the juvenile court judge to falsely portray Plaintiffs as unfit.

28. Defendants repeatedly defied explicit juvenile court orders mandating regular visitation and therapeutic visits, severing familial bonds without judicial authorization.

29. As a direct result, Plaintiffs have been permitted to see only two of their four biological children over two consecutive years, causing severe emotional distress and total deprivation of family integrity.

30. In or about March 2025, during the ongoing deprivation of Plaintiffs' parental rights, Defendants intentionally violated Plaintiffs' constitutional rights and the minor children's rights to bodily integrity by administering mind-altering or psychotropic medications to Plaintiffs' three-year-old child against Plaintiffs' explicit will and without parental or judicial authorization.

31. In or about March 2025, Defendants further authorized and subjected Plaintiffs' eight-year-old son to an elective, non-emergency surgical procedure without obtaining parental consent, parental notification, or an emergency court order authorizing the procedure.

32. Defendants intentionally ignored and defied explicit court orders instructing the agency to send necessary service and treatment referrals to help reunite the family.

33. Defendants exhibited deliberate indifference to the severe emotional distress of the minor children caused by the illegal removal by waiting over one full year before placing the minor children into necessary mental health counseling.

34. Defendants further demonstrated deliberate indifference and a reckless disregard for the welfare of the minor children by actively violating the explicit terms of the court-approved case plan. Specifically, the case plan strictly mandated that all minor children remain within Tuscarawas County and continue attending their current school districts to minimize trauma. In

direct defiance of this mandate, Defendants authorized and permitted a placement provider to remove Plaintiffs' minor daughter from Tuscarawas County and enroll her in a completely different school district without parental consent or judicial authorization, causing additional instability and emotional harm to the child.

35. The severe nature of the constitutional violations and systemic fabrications in this matter occurred alongside significant personnel changes within the agency, the separation from employment of the initial removal caseworker, Melissa Kelley, and the sudden resignation of Defendant Jason Hamric on or about August 3, 2026, immediately after Plaintiffs confronted him regarding acts of perjury under oath. This pattern of abrupt departures highlights a critical lack of administrative oversight, training, and supervision within Tuscarawas County which permitted a custom of unchecked constitutional violations to persist against Plaintiffs and their minor children.

36. The underlying state juvenile court case remains active until its statutory sunset date of September 28, 2026, with a final legal custody hearing scheduled for September 4, 2026.

**LEGAL CLAIMS (COUNTS)**

37. COUNT I (4th Amendment): Unlawful warrantless seizure and unconstitutional detention of the minor children from August 28 to September 30, 2024, and exceeding the scope of the access order via coercive police force and retaliatory procurement of a fraudulent court order.

38. COUNT II (14th Amendment): Deprivation of procedural due process via the absolute denial of a mandatory 72-hour emergency shelter care hearing, forced unrepresented proceedings without counsel, an unconstitutional absence of evidence, and denial of an impartial tribunal.

39. COUNT III (14th Amendment): Judicial deception and bad-faith fabrication of the case timeline and drug test results to mislead the judiciary.

40. COUNT IV (14th Amendment): Violation of the fundamental right to familial and bodily

integrity via the restriction of court-ordered visits, withholding of court-ordered referrals, medical neglect, and ,unauthorized surgical/pharmaceutical interventions on minor children.

**MOTION FOR ADMINISTRATIVE STAY**

41. Plaintiffs acknowledge the state juvenile proceeding handles active custody details through its statutory sunset date of September 28, 2026, with a hearing scheduled on September 4, 2026. To respect federal abstention doctrines while strictly preserving the federal two-year statute of limitations expiring August 28, 2026, Plaintiffs explicitly request this Court accept this filing, but immediately enter an Administrative Stay over these federal proceedings until September 29, 2026.

**PRAYER FOR RELIEF**

Plaintiffs demand compensatory and punitive damages against the individual defendants, municipal liability damages against Tuscarawas County, and reasonable statutory attorney's fees.

Respectfully submitted,

Shawn Pongratz

Date 8/27/26

Shawn Pongratz, Plaintiff Pro Se
558 E Buchtel Ave unit 1 Akron, OH 44304
330-827-1139, shawnpon1223@gmail.com

Date 8/27/26

Aleesha Pongratz, Plaintiff, Pro Se

558 E Buchtel Ave unit 1 Akron, OH 44304

330-243-5465, aleeshapongratz@my.fortis.edu